# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MIRANDA MARCH on behalf of CAT, | § § § | |
| *Plaintiff,* | § § | |
| *versus* | § § | CIVIL ACTION NO. 1:13-703 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | § § § § § | |
| *Defendant.* | § § | |

## **REPORT AND RECOMMENDATION**

Miranda March ("March"), invoking subject-matter jurisdiction under 42 U.S.C. § 405(g), complains of the denial of an application for supplemental security income filed on behalf of her minor child, "CAT."[1]

## I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when substantial evidence

---

[1] In accordance with Rule 5.2(a) of the Federal Rules of Civil Procedure and 8.1 of the Local Rules for the Northern District of New York, the minor, "CAT," will be referred to by initials.

supports the decision.  *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).  Neither can they overturn administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance.  *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (summary order).[2]

## II. Background

When CAT was six years old and in the first grade, March applied in CAT's behalf for disability-based supplemental security income benefits.  March identified Developmental Coordination Disorder, Attention Deficit/Hyperactivity Disorder ("ADHD"), and Asperger's Disorder[3] as CAT's disabling impairments.[4] (T. 126).

---

[2] When reviewing acts of administrative agencies, courts also must take "due account" of "the rule of prejudicial error."  5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights").

[3] Asperger's Syndrome is a developmental disorder akin to autism with the following characteristics: "Language and cognition generally better than in autism; socially isolated and often viewed as odd or eccentric; clumsiness; repetitive patterns of behavior, interests, and activities; atypical sensory responses (*e.g.*, exquisite sensitivity to noises, food odors or tastes, or clothing textures); pragmatic deficits (*e.g.*, extremely concrete use of language or difficulty recognizing irony or jokes)." *Luckett v. Astrue*, No. 2:09-cv-00037 KJN, 2010 WL 3825703, at *1, n.4 (E.D. Cal. Sept. 28,2010)(quoting *Mark H. Beers, M.D .*, *et al.*, eds., The Merck Manual of Diagnosis and Therapy 2487 (Merck Research Labs., 18th ed. 2006) ("Merck Manual")).

[4] In the year prior to the application, CAT met with a pediatrician, A. George Pascual, M.D., a specialist in developmental-behavioral pediatrics.  (T. 214-16).  He evaluated CAT and, on a behavioral rating scale, scored CAT in various behavior categories.  (*Id.*).  Based on neurodevelopmental testing, he diagnosed CAT with a developmental coordination problem, ADHD, combined type, and Asperger's Disorder.  (T. 215).

CAT then was referred by March to the Committee on Special Education at Greenville Central School District for a psychoeducational evaluation. (T. 140). She expressed concerns about CAT not paying attention and not staying on task. (*Id*).

## III. Commissioner's Decision

The Supplemental Security Income ("SSI") program provides that:

> *[a]n individual under the age of 18 . . .* [may receive benefits] . . . . *if that individual has a medically determinable . . . mental impairment, which results in marked and severe functional limitations*, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i) (emphasis added).

### A. *Sequential Evaluation*

The Commissioner uses a three-step, sequential analysis to determine child-benefits eligibility.[5] 20 C.F.R. § 416.924(a); *see also Frye ex rel. A.O. v. Astrue*, 485 Fed. App'x 484, 487 (2d Cir. 2012) (summary order) (describing three-step sequential analysis to determine whether a child is eligible for SSI benefits on the basis of a disability). At Step 1, administrative judges determine whether a child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If not, they consider at Step 2 whether the child has a "medically determinable impairment that is severe." *Id.* § 416.924(c). If so, administrative judges proceed to Step 3 to determine whether the impairment "medically equals" or "functionally equals" a presumptive disability in a "Listing of Impairments." *Id.* § 416.924(c)-(d). When a child has such an impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least 12 months, the child is deemed disabled and entitled to benefits. 20 C.F.R. § 416.924(d)(1).

---

[5] The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered.

B.  *Evidentiary Hearing, Findings and Conclusions*

CAT's case was assigned to administrative law judge Dale Black-Pennington ("ALJ Black-Pennington"), who conducted an evidentiary hearing on April 11, 2012. (T. 20, 34-64). March and CAT appeared, along with their non-attorney representative, Janice Cammarato. (*Id.*). ALJ Black-Pennington received into evidence (a) testimony from March and CAT, (b) forensic reports from state agency consultants, and (c) CAT's medical and school records. (*Id.*).

ALJ Black-Pennington issued a decision finding CAT not disabled. At Step 2, he found that CAT has severe impairments of ADHD, Asperger's Disorder, and Developmental Coordination Disorder. But, at Step 3, he found that CAT does not have an impairment or combination of impairments that medically meets or functionally equals a listed impairment. (T. 23-30). Consequently, ALJ Black-Pennington concluded that CAT is not disabled. (T. 30).

The Appeals Council denied Plaintiff's request to review; Plaintiff timely instituted this case, represented by counsel.

## IV. Alleged Errors

March contends that ALJ Black-Pennington erred when finding that CAT does not have an impairment (or combination of impairments) that (1) meets or medically equals the severity of a Listing or (2) functionally equals the severity of a Listing. (Dkt. No. 13, p. 1, 3-7). Specifically, March first maintains that substantial evidence in the record supports a finding that CAT meets Listing 112.10 (Autistic Disorder and Other Pervasive Developmental Disorders). Secondly, March argues that, when evaluating whether CAT's impairment

functionally equals the severity of a Listing, ALJ Black-Pennington erred when finding less than marked limitations in two domains: "attending and competing tasks" and "interacting and relating with others." (Dkt. No. 13, pp. 6-7).

The Commissioner responds with arguments that ALJ Black-Pennington employed correct legal principles, and his factual findings are supported by substantial evidence.[6] (Dkt. No. 16, pp. 6-10).

## IV. Discussion and Analysis

March does not suggest that ALJ Black-Pennington failed to apply correct principles of law. March argues, instead, that substantial evidence does not support ALJ Black-Pennington's findings. To support this argument, March chronicles in her brief extensive evidence from the record that March views as adequate to support a finding that CAT has an impairment that medically or functionally equals a disability listed in the Commissioner's listing of presumptively disabling impairments. (Dkt. No. 13, pp. 4-5).

This approach to demonstrating evidentiary error is unconventional at best. First, it smacks of an improper invitation for the court to exceed its narrow authority by reweighing evidence and coming to a different conclusion. Second, it is misdirected. The governing circuit court of appeals recently explained that "whether there is substantial evidence supporting the [claimant]'s view is not the question." *Bonet ex rel. T.B. v. Colvin*, 532 Fed. App'x 58, 59 (2d Cir. 2013) (summary order). Rather, the court "must decide whether substantial evidence supports *the ALJ's decision.*" *Id*. (emphasis in original).

---

[6] Under this district's practice, the parties marshal their arguments through competing briefs. *See* General Order #18, September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders). (Dkt. No. 3).

"Substantial Evidence" is a term of art meaning less than a "preponderance" (usual standard in civil cases), but "more than a mere scintilla," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 378, 401 (1978); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir.2004). Stated another way, to be "substantial," evidence need only be "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.*, 306 U.S. 262, 299–300 (1939) (cited in Harvey L. McCormick, Social Security Claims and Procedures § 672 (4th ed. 1991)).

March's irregular approach, relying solely on favorable evidence, will succeed only if there is no contrary evidence a reasonable mind might accept as adequate to establish the factual findings made by ALJ Black-Pennington. It requires a showing of either a total lack of evidence supporting those findings, or a showing that evidence supporting March's view is so overwhelming, while evidence to the contrary is so sparse, weak or incredible, that a finding based thereon is patently unreasonable.

A. *"Meets" or "Medically Equals" Point of Error*

March maintains that CAT's impairment of Asperger's Disorder meets or medically equals the requirements of the Commissioner's Listing 112.10 for Autistic Disorder and Other Pervasive Developmental Disorders. To meet the requirements of this listing, a child first must have an autistic disorder or other pervasive development disorder characterized by "qualitative deficits" in

development of reciprocal social interaction, verbal and nonverbal communication skills, and imaginative activity. In addition, the child must exhibit a markedly restricted repertoire of activities and interests (Paragraph "A" criteria). *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 112.10(A). Second, the child must establish that her disorder results in at least two marked impairment-related functional limitations (Paragraph "B" criteria). *Id.*, at § 112.10(B).[7]

March's brief chronicles at length various items of evidence that she views as sufficient to satisfy all these requirements. Assuming *arguendo* that March's

---

[7] "B" criteria "describe impairment-related functional limitations." 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00(A). To establish the B criteria for Listing 112.10, for children (age 3 to attainment of age 18), there must be at least two of the appropriate age-group criteria in paragraphs B2 of 112.02. *See id.*, at § 112.10(B). Paragraph B2 of 112.02 states "B" criteria as follows:

    a.    Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

    b.    Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

    c.    Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

    d.    Marked difficulties in maintaining concentration, persistence, or pace.

*Id.*, at § 112.02(B)(2)(a)-(d).

evidence would satisfy Listing 112.10, that alone does not warrant an automatic reversal. The pertinent inquiry is whether *other* evidence to the contrary supports ALJ Black-Pennington's finding that CAT's Asperger's Disorder does not meet these requirements.

When the inquiry is focused properly, it is evident that substantial evidence supports the adverse finding. First, ALJ Black-Pennington had before him a Childhood Disability Evaluation completed by Dr. Deborah Bostic, a state agency psychological consultant who reviewed the evidence of record on June 30, 2011, as part of an initial disability determination explanation in this case. Dr. Bostic found that CAT has impairments of ADHD and Autistic Disorder and Other Pervasive Developmental Disorders, but that they do not meet, medically equal, or functionally equal any listed impairment. (T. 68-69). State agency psychological consultants are highly qualified experts in Social Security disability evaluation. *See* 20 C.F.R. § 416.927(e)(2)(i). Thus, Dr. Bostic's evidence alone is sufficient to constitute substantial evidence.

Second, ALJ Black-Pennington correctly observed that no treating or examining physician made findings equivalent in severity to criteria of any listed impairment. Third, ALJ Black-Pennington accurately noted that CAT does well in school, has no behavioral problems and functions on an average level in most areas. Finally, the Commissioner's brief points to numerous additional segments of evidence which support a finding that CAT does not exhibit qualitative deficits in reciprocal social interaction and verbal and nonverbal communication, or a markedly restricted repertoire of activities and interests. (Dkt. No. 16, pp. 7-8).

Even if the evidence lifted up for consideration by March could be viewed as sufficient to meet the requirements of Listing 112.10, there was evidence to the contrary that ALJ Black-Pennington found more persuasive. That evidence, at a minimum, would be sufficient to preclude a judgment as a matter of law in March's favor on this issue if it were a jury question. As such, it constitutes substantial evidence, and March's first point of error, therefore, cannot be sustained.

## B. *Functional Equivalence Point of Error*

When an impairment does not *medically equal* the "Listing of Impairments," it is evaluated next for *functional equivalence.* An adjudicator considers how a child functions in everyday-life activities segregated for analytical purposes into "domains" delineating "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).[8] A medically determinable impairment or combination of impairments "functionally equals" a listed impairment when it results in *marked*

---

[8] The domains are:

```
(i)   Acquiring and using information;
(ii)  Attending and completing tasks;
(iii) Interacting and relating with others;
(iv)  Moving about and manipulating objects;
(v)   Caring for yourself; and,
(vi)  Health and physical well-being.
```
20 C.F.R. § 416.926a(b)(1)(i)-(vi).

limitations in *two* domains or an *extreme* limitation in at least *one*.[9]  *Id.* § 416.926a(a).

Social Security Ruling (SSR) 09–1p directs administrative law judges to employ a "whole child" approach. This requires administrative law judges to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain. SSR 09-1p, TITLE XVI: DETERMINING CHILDHOOD DISABILITY UNDER THE FUNCTIONAL EQUIVALENCE RULE–THE "WHOLE CHILD" APPROACH, 2009 WL 396031, at *2-3 (SSA Feb. 17, 2009).

1. Findings

ALJ Black-Pennington, citing all pertinent Regulations and Rulings,[10] made specific findings with regard to each of the six domains of functioning. (T. 25-30). He found with respect to domains 4 and 6 that CAT has no limitations in moving about and manipulating objects (T. 28) or in health and physical well-being (T. 30). He found that while CAT has deficits in the remaining domains, her limitations are less than marked.

---

[9] A "marked" limitation" interferes seriously with ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation means "more than marked," and represents an impairment which "interferes very seriously with . . . ability to independently initiate, sustain, or complete activities," and this rating is only "give[n] to the worst limitations." 20 C.F.R. § 416.926a(e)(3).

[10] *See* 20 C.F.R. §§ 416.926a(g)(3), 416.926a(h)(3), 416.926a(i)(3), 416.926a(j)(3), 416.926a(k)(3), 416.926a(l)(3); *see also* SSR 09-3p, SSR 09-4p, SSR 09-5p, SSR 09-6p, SSR 09-7p, SSR 09-8p.

2. Challenges

March attacks ALJ Black-Pennington's findings that CAT has less than marked limitations in domains 2 and 3. As was the case with her first point of error, March identifies multiple items of evidence that she views as establishing that CAT has marked limitations in attending and completing tasks (Domain 2) and in interacting and relating with others (Domain 3).

3. Application

Since March challenges only ALJ Black-Pennington's findings regarding CAT's functional limitations in Domains 2 and 3, only those findings are examined. And, as was the case with the first point of error, the undersigned accepts *arguendo* March's argument that pertinent evidence can be viewed as sufficient to reflect that CAT has marked limitations in those areas of functioning. The determinative question, however, is whether contrary substantial evidence supports ALJ Black-Pennington's findings.

*a. Domain 2 (Attending and Completing Tasks)*

This domain encompasses a child's ability to focus and maintain attention, and how well she is able to "begin, carry through, and finish [her] activities, including the pace at which [she] perform[s] activities and the ease with which [she] change[s] them." 20 C.F.R. § 416.926a(h); *see also* SSR 09–4p, TITLE XVI: DETERMINING CHILDHOOD DISABILITY–THE FUNCTIONAL EQUIVALENCE DOMAIN OF "ATTENDING AND COMPLETING TASKS," 2009 WL 396033, at *2 (S.S.A. Feb. 18, 2009). School-age children should be able to be able to focus their attention in a variety of situations in order to follow directions, remember and organize

school materials, and complete classroom and homework assignments. 20 C.F.R. § 416.926a(h)(2)(iv). Additionally, they should be able to concentrate on details and not make careless mistakes in their work, be able to change activities or routines without distracting themselves or others, and stay on task and in place when appropriate. *Id*. The child should be able to sustain her attention well enough to participate in group sports, read alone, and complete family chores. *Id*. Further, they should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. *Id*.

ALJ Black-Pennington acknowledged that CAT has received a diagnosis of ADHD-Combined type, and that teacher notes reflect that CAT has difficulty staying focused, and needs re-direction. (T. 26). Those same records, however, also document that CAT does not exhibit attention deficit hyperactivity or impulsive behavior in school. Further, CAT's lack of focus has not significantly impeded her academic learning, as she scored within the low average to average range on testing. (T. 150).

A reasonable mind could accept this evidence as sufficient to establish that CAT's impairment does not interfere seriously with her ability to independently initiate, sustain, or complete activities. As such, a reviewing court must conclude that substantial evidence supports ALJ Black-Pennington's "less than marked" finding in this domain.

### b. *Domain 3 (Interacting and Relating with Others)*

This domain encompasses a child's ability to "initiate and sustain emotional connections with others, develop and use the language of [her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i); *see also* SSR 09-5p, TITLE XVI: DETERMINING CHILDHOOD DISABILITY–THE FUNCTIONAL EQUIVALENCE DOMAIN OF "INTERACTING AND RELATING WITH OTHERS," 2009 WL 396026, at *2 (S.S.A. Feb. 17, 2009). A school-age child should be able to develop more lasting friendships with children her age, begin to understand how to work in groups to create projects and solve problems, have an increasing ability to understand another's point of view and to tolerate differences. 20 C.F.R. § 416.926a(i)(2)(iv). Additionally, a child should be able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. *Id.*

ALJ Black-Pennington acknowledged CAT's diagnosis of Asperger's Disorder and her classification as autistic. (T. 27). Further, he specifically recognized evidence indicating that CAT exhibits some characteristics of the disorder such as poor eye contact, slow response, hypersensitivity and lack of facial expression. (*Id.*). ALJ Black-Pennington also noted evidence indicating that CAT interacted with other children during the school day to a lesser degree than her peers, and often she preferred to remain by herself. (*Id.*).

On the other hand, ALJ Black-Pennington discerned observations in the medical evidence of record recording that CAT is a well-behaved, polite child who gets along with her classmates and sister. (T. 55-56, 156, 199-200). A

Confidential Psychological Evaluation prepared jointly by the school psychologist, Dr. Audrey Douglas, Ph.D. , and an intern, Kara Maccio, M.S., noted that CAT attended regular education classes. (T. 150). CAT's mood was positive, and she did not engage in negative behaviors. (T. 158). During a battery of tests to assess cognitive and academic abilities, the examiner noted that CAT "was extremely sweet and polite during all testing sessions." (T. 144). CAT's full scale IQ score was 103. (T. 145). Dr. Douglas assessed that her cognitive abilities were within average range, and her academic abilities were low average to average range. (T. 150).

CAT also was evaluated for speech therapy services. It was observed that she had average articulation skills and atypical voice quality that did not affect her ability to use her voice to communicate her wants and needs. (T. 168). Thus, she did not require any speech or language services. (*Id*.). Educational records repeatedly disclose that CAT is a creative storyteller and that she has the ability to voice her opinions. (T. 155, 168, 192).

ALJ Black-Pennington considered both favorable and unfavorable evidence in reaching his decision. His finding that CAT's limitations in interacting and relating with others are less than marked is supported by substantial evidence within the specialized meaning of that term.

## V. Conclusion and Recommendation

Substantial evidence supports ALJ Black-Pennington's determination that CAT is not disabled within the meaning of the Act because her impairments do not meet, "medically equal," or "functionally equal" a listed impairment

contained in childhood disability regulations. Accordingly, the Commissioner's decision should be AFFIRMED, and March's request to remand this action should be DENIED.[11]

## VI. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the  27  day of     March     2014.

/s/ Earl S. Hines
Earl S. Hines
United States Magistrate Judge

---

[11] CAT was evaluated at a very tender age when it was difficult to assess her functional limitations. Hopefully, as she matures, her symptoms will subside and improve. If, instead, they persist or worsen, March should not hesitate to file a renewed application based on updated and more definitive evidence.